Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| | No.  CV 12-0345-PHX-DGC |
| Robert Christopher, | **PLAINTIFF'S STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | **and** |
| Spectra Electrical Services, Inc., | |
| Defendant. | **PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF TOM CAMPBELL** |

Pursuant to LR Civ 56.1(b), Plaintiff submits the following <u>Statement of Facts</u> in opposition to Defendant's <u>Motion for Partial Summary Judgment</u> and <u>Statement of Facts</u>.  Plaintiff also moves to strike the Declaration of Tom Campbell because it contains inadmissible hearsay and violates this Court's Order of January 25, 2013.

Respectfully submitted this 26th day of April 2013.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

<u>s/ Stephen Montoya</u>
Stephen Montoya
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

1.    Mr. Christopher admits paragraph 1 of Defendant's <u>Statement of Facts</u>.

2.    Mr. Christopher admits paragraph 2 of Defendant's <u>Statement of Facts</u>.

3.    Mr. Christopher admits paragraph 3 of Defendant's <u>Statement of Facts</u>.

4.    Mr. Christopher admits that paragraph 4 of Defendant's <u>Statement of Facts</u> accurately recites Spectra's Employee Manual, but <u>DENIES</u> that Spectra actually enforces the anti-discrimination policies set forth in the Manual. <u>See</u> ¶¶ 5, 7, 9, 12, 13, 17, 23, 35, 72, 75, 115, and 137 below.

5.    Mr. Christopher <u>DENIES</u> paragraph 5 of Defendant's <u>Statement of Facts</u>. As Mr. Christopher testified in his deposition:

> Q.    Now, are you sure you got a copy of Spectra's employee handbook?
>
> A.    No, I'm not. . . .
>
> Q.    Now, did anyone at Spectra tell you who you were to communicate with if you believed that you were being discriminated against at Spectra?
>
> A.    No.
>
> Q.    Do you remember getting a Spectra employee manual the first time you worked for Spectra in 2005?
>
> A.    I don't.   I just remember filling out some paperwork.

<u>See</u> Deposition of Robert Christopher, p. 229, lines 2-3, 11-14, and p. 41, lines 6-10, attached hereto as Exhibit A.

6.    Mr. Christopher admits that paragraph 6 of Defendant's <u>Statement of Facts</u> accurately recites Spectra's Employee Manual, but <u>DENIES</u> that Spectra

actually enforces the anti-discrimination policies set forth in the Manual. See ¶ 6 above and ¶¶ 7, 9, 23, 35, 72, 75, 115, and 137 below.

7.      Mr. Christopher admits that paragraph 7 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual. Specifically, after Mr. Christopher complained that his direct supervisor at Spectra, Mr. Erik White, was engaging in discriminatory harassment against Mr. Christopher based on race in the workplace, Spectra did not investigate Mr. Christopher's complaint, interview Mr. Christopher regarding his complaint, or discipline Erik White in any way for engaging in discriminatory harassment in the workplace.   See Exhibit A, p. 111, line 22 to p. 112, line 2; Exhibit B, and Exhibit C, p. 10, ¶ 9, lines 20-24.

Spectra has also failed to discipline other supervisors for engaging in discriminatory harassment in the workplace, for example, Mr. Tracy Tolomio. See ¶¶ 9, 23 below.  This is further evidence of Spectra's failure to enforce its discrimination policy.

8.      Mr. Christopher admits that paragraph 8 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual. See ¶¶ 6, 7 above and ¶¶ 9, 23, 35, 72, 75, 115, and 137 below.

9.      Mr. Christopher admits that paragraph 9 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual.

See ¶¶ 5, 7 above and ¶¶ 23, 35, 72, 75, 115, and 137 below.  In fact, "John Brunia, as Spectra's President, [the individual] with ultimate responsibility for administering and enforcing Spectra's [employment discrimination] policies,"  see Exhibit C, p. 3, ¶ 1, lines 1-9, 13-15, has absolutely no background in Human Resources or discrimination law and could not even summarize the basic content of Spectra's written policy prohibiting discrimination in the workplace.  As Mr. Brunia admitted in his deposition:

> Q.    Do you have any expertise in the field of human resources?
>
> A.    No, sir.
>
> Q.    Have you ever studied the field of human resources?
>
> A.    No, sir.

See Deposition of John Brunia, p. 33, lines 3-8, attached hereto as Exhibit D.

> Q.    Are you aware that federal law renders it illegal to discriminate against individuals based upon their national origin, their race, their color, their gender?
>
> A.    Yes, sir.
>
> Q.    How do you know that?
>
> A.    Basic knowledge, I would believe.
>
> Q.    I think most Americans know that just by growing up in America, right?
>
> A.    Yes.
>
> Q.    And I understand that, sir, and I respect that.  But what I'm trying to ascertain is whether or not

> you've studied that [subject matter to] any degree more than someone who just reads the paper and watches TV and is lucky enough to grow-up in the United States.
>
> A.   No.

Id. at p. 35, line 25, p. 36, lines 1-15.

Mr. Brunia also admitted that he was utterly unfamiliar with Spectra's particular anti-discrimination policies:

> Q.   Do you know the content of Spectra's anti-discrimination policy?
>
> A.   No, sir.
>
> Q.   So you don't know what Spectra's anti-discrimination policy prohibits?
>
> A.   Not off the top of my head, sir.

Id. at p. 48, lines 3-8.

10.   Mr. Christopher admits that paragraph 10 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual.  See ¶¶ 5, 7, 9 above and ¶¶ 12, 23, 35, 72, 75, 115, and 137 below.

11.   Mr. Christopher admits that paragraph 11 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual.  See ¶¶ 5, 7, 9 above and ¶¶ 12, 23, 35, 72, 75, 115, and 137 below.

12.   Mr. Christopher admits that paragraph 12 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that

Spectra actually enforces the anti-discrimination policies set forth in the Manual. Specifically, after Mr. Christopher complained of Mr. White's discriminatory harassment in writing by means of a written complaint to Mr. Christopher's Union, "IBEW Local 640," see attached Exhibit B, although the Union forwarded a copy of Mr. Christopher's complaint to Spectra, Spectra never contacted Mr. Christopher regarding his complaint in order to attempt to resolve his complaint. As Mr. Christopher testified in his deposition:

> Q. Now, after you filed this [complaint] with the union, who from Spectra called you to get your side of the story as to why you abruptly departed from Spectra's employment in late October of 2008.
>
> A. I didn't get any call from Spectra.

Exhibit A, p. 238, lines 21-25.

> Q. Did Tom Campbell call you up in November after you filed this complaint on November 5th of 2008 to ask you what you were talking about, what happened?
>
> A. No, I didn't receive no call.
>
> Q. After you complained to the union regarding racial slurs at Spectra, tell me who contacted you from Spectra by telephone to find out your side of the story.
>
> A. I didn't get one call.

Id. at p. 239, lines 4-13. As John Brunia testified in his Fed. Civ. R. Pro. Rule 30(b)(6) deposition:

Q.   Now, tell me, did you try to call Robert Christopher after he allegedly quit in late November of 2008 to find out what happened?

A.   No, sir.

Id. at p. 82, lines 21-24.

Q.   Now, let me just ask you a super simple question.

A.   Yes, sir.

Q.   Robert Christopher accused Erik White of using racial slurs, right?

A.   Yes, sir.

Q.   And [Mr. Christopher] made the accusation a few days after he left the company, right?

A.   By the record, yes, sir.

Q.   Now, if you were conducting the investigation, sir . . . wouldn't you want to get Mr. Christopher's side of the story before you rendered any conclusions?

A.   No, sir.

Id. at p. 98, lines 2-21.  Had Spectra actually interviewed Mr. Christopher regarding his complaint, Spectra would have probably also discovered witnesses corroborating the complaint, for example, Mr. Jason Adkinson, who witnessed Erik White discriminatorily harass Mr. Christopher in the workplace at Spectra, in addition to witnessing other discriminatory harassment on a "daily" basis.  See, Deposition of Jason Adkinson, p. 21, lines 19-21; p. 22, lines 2-8; p. 26, lines 21-25; p. 27, lines 4-7; p. 31, line 23 to p. 33, line 5, attached as Exhibit K.

13.   Mr. Christopher admits that paragraph 13 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that

Spectra actually enforces the anti-discrimination policies set forth in the Manual.  As Mr. Christopher testified in his deposition:

> Q.   Did anyone from Spectra management come at any of these safety meetings or at any other meeting that you had at Spectra to tell you what to do if you believed you were being discriminated against at Spectra?
>
> A.   No, I never—they're definitely not going to come on the nightshift.  So we never see no one from the office except during the daytime, but we never got no speech of any sort.
>
> Q.   Did anyone on the dayshift ever come out to your work site to tell you about Spectra's alleged anti-discrimination policy?
>
> A.   No.
>
> Q.   Now, did anyone from Spectra ever come to you and tell you that the company prohibited retaliation against employees who complained of perceived illegalities in the workplace?
>
> A.   I had no speech or discussion with anyone.

See Exhibit A, p. 230, lines 8-25.

14.   Mr. Christopher admits that paragraph 14 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the Manual.  See ¶¶ 5, 7, 9, 12, 13 above and ¶¶ 23, 35, 72, 75, 115, and 137 below.

15.   Mr. Christopher admits that paragraph 15 of Defendant's Statement of Facts accurately recites Spectra's Employee Manual, but DENIES that Spectra actually enforces the anti-discrimination policies set forth in the

Manual.  <u>See</u> ¶¶ 5, 7, 9, 12, and 13 above and ¶¶ 23, 35, 72, 75, 115, and 137 below.

16.     Mr. Christopher admits that paragraph 16 of Defendant's <u>Statement of Facts</u> accurately recites Spectra's Employee Manual, but <u>DENIES</u> that Spectra actually enforces the anti-discrimination policies set forth in the Manual.  <u>See</u> ¶¶ 5, 7, 9, 12, 13 above and ¶¶ 23, 35, 72, 75, 115, and 137 below.

17.     Mr. Christopher <u>DENIES</u> paragraph 17 of Defendant's <u>Statement of Facts</u>. As Mr. Christopher testified in his deposition:

> Q.     Now, are you sure you got a copy of Spectra's employee handbook?
>
> A.     No, I'm not.
>
> Q.     Now, did anyone at Spectra tell you who you were to communicate with if you believed that you were being discriminated against at Spectra?
>
> A.     No.

<u>See</u> Exhibit A, p. 229, lines 2-3, 11-14.

> Q.     Did anyone from Spectra management come at any of these safety meetings or at any other meeting that you had at Spectra to tell you what to do if you believed you were being discriminated against at Spectra?
>
> A.     No, I never—they're definitely not going to come on the nightshift.  So we never see no one from the office except during the daytime, but we never got no speech of any sort.
>
> Q.     Did anyone on the dayshift ever come out to your work site to tell you about Spectra's alleged anti-discrimination policy?

A.    No.

Q.    Now, did anyone from Spectra ever come to you and tell you that the company prohibited retaliation against employees who complained of perceived illegalities in the workplace?

A.    I had no speech or discussion with anyone.

Id. at p. 230, lines 8-25.

18.    Mr. Christopher admits paragraph 18 of Defendant's <u>Statement of Facts</u>.

19.    Mr. Christopher <u>DENIES</u> paragraph 19 of Defendant's <u>Statement of Facts</u>. <u>See</u> ¶ 17 above.

20.    Mr. Christopher admits paragraph 20 of Defendant's <u>Statement of Facts</u>.

21.    Mr. Christopher <u>DENIES</u> paragraph 21 of Defendant's <u>Statement of Facts</u>. <u>See</u> ¶ 17 above.

22.    Mr. Christopher <u>DENIES</u> paragraph 22 of Defendant's <u>Statement of Facts</u>. <u>See</u> ¶¶ 5, 7, 9, 12, 13, and 17 above and ¶¶ 23, 35, 72, 75, 115, and 137 below.

23.    Mr. Christopher admits paragraph 23 of Defendant's <u>Statement of Facts</u>, but affirmatively alleges that Spectra did <u>not</u> take adequate disciplinary action against Mr. Tracy Tolomio in response to Ms. Tanya Stewart's complaint of sexual harassment.  The facts regarding this incident are set forth in a Memorandum by Trina Viner, Spectra's "Payroll/HR Administrator":

March 1, 2006 was Tanya Stewart's first day of assignment at the INTEL job site under Tracy Tolomio's supervision, and Tanya reports that Tracy made comments to her that she found offensive. *It began with Tracy asking Tanya if she was married to which she*

*replied that she is.  Tracy told her that he is not married but likes dating married women because he doesn't have to deal with any attachments.  Tracy then said, "don't turn me in to the board, but if we were to go out. . . ."  Tanya didn't like how the conversation was going and told Tracy that she loves her husband very much, and changed the subject.*

Later on that same day, Tanya and Tracy saw a missing child poster *(of a girl about 10 years old)* on the back of a bus.  Tanya commented to Tracy that she wondered what the date of the poster was.  *Tracy said that he didn't know but that she (the child on the poster) "had nice lips and he wondered how they would feel around his dick."  Tracy then said to Tanya, "you know why I like kids?  Because they have small hands and when they're wrapped around my dick they make my dick look big."*  Tanya reports being very disturbed by Tracy's comments and asked Tracy if he "liked" kids that way, but Tracy didn't answer her.

See attached Exhibit F, p. 00349 (emphasis added).  Although Tracy Tolomio actually "acknowledged the statements and did not refute what he had said" [emphasis added] and thus admitted that he had in fact made the statements quoted above to Tanya Stewart, id. at p. 00350, Spectra only issued Mr. Tolomio a "written warning" in response to his sexually perverted (and despicable) remarks.  Id.

Even Spectra's "second" Rule 30(b)(6) deposition designate, Stephen Land, testified that he probably would have terminated Tracy Tolomio for making the remarks.  See Deposition of Stephen Land, p. 76, lines 10-22, attached as Exhibit J.  Indeed, instead of terminating Mr. Tolomio, Spectra actually promoted him to the position of General Foreman.  Id. at p. 77, lines 3-9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, although Stephen Land was Spectra's "second" Rule 30(b)(6) deposition designate pursuant to this Court's Order of January 25, 2013, see attached Exhibit J, much like John Brunia, Mr. Land has no background in Human Resources, has no background in anti-discrimination law, has never enforced Spectra's alleged anti-discrimination policy, does not otherwise purport to be an expert on Spectra's alleged anti-discrimination policy, and has no personal knowledge of whether or not Spectra actually enforces its alleged anti-discrimination policy. Id. at p. 9, lines 20-25; p. 12, lines 9-13; p. 69, lines 2-5; p. 77, lines 14-17.

24. Mr. Christopher admits paragraph 24 of Defendant's Statement of Facts.

25. Mr. Christopher admits paragraph 25 of Defendant's Statement of Facts.

26. Mr. Christopher admits paragraph 26 of Defendant's Statement of Facts.

27. Mr. Christopher admits paragraph 27 of Defendant's Statement of Facts.

28. Mr. Christopher admits paragraph 28 of Defendant's Statement of Facts.

29. Mr. Christopher admits paragraph 29 of Defendant's Statement of Facts.

30. Mr. Christopher admits paragraph 30 of Defendant's Statement of Facts.

31. Mr. Christopher admits paragraph 31 of Defendant's Statement of Facts.

32. Mr. Christopher admits paragraph 32 of Defendant's Statement of Facts.

33. Mr. Christopher admits paragraph 33 of Defendant's Statement of Facts.

34. Mr. Christopher admits paragraph 34 of Defendant's Statement of Facts.

35. Mr. Christopher DENIES paragraph 35 of Defendant's Statement of Facts.

As Mr. Christopher testified in his deposition:

Q.    Now, are you sure you got a copy of Spectra's

1    employee handbook?

2    A.    No, I'm not.

3    Q.    Now, did anyone at Spectra tell you who you were
4          to communicate with if you believed that you were
5          being discriminated against at Spectra?

6    A.    No.

7    See Exhibit A, p. 229, lines 2-3, 11-14.

8    Q.    Did anyone from Spectra management come at
9          any of these safety meetings or at any other
10         meeting that you had at Spectra to tell you what to
           do if you believed you were being discriminated
11         against at Spectra?

12   A.    No, I never—they're definitely not going to come
           on the nightshift.  So we never see no one from
13         the office except during the daytime, but we never
           got no speech of any sort.
14

15   Q.    Did anyone on the dayshift ever come out to your
16         work site to tell you about Spectra's alleged anti-
           discrimination policy?

17   A.    No.
18

19   Q.    Now, did anyone from Spectra ever come to you
           and tell you that the company prohibited retaliation
20         against employees who complained of perceived
           illegalities in the workplace?
21

22   A.    I had no speech or discussion with anyone.

23   Id. at p. 230, lines 8-25.  Mr. Brunia was also unaware of whether or not

24   Spectra had made any efforts to train its employees regarding its

25   discrimination policies and procedures:
26

27   Q.    Now, you sat through the entirety of Robert
           Christopher's deposition on Monday, the day
           before yesterday, right?
28
     A.    Yes, sir. . . .

Q. Do you remember me asking him: Did anyone at Spectra ever come to you at an employee meeting and talk to you about Spectra's employment discrimination policies and do you remember him answering no?

A. I believe so.

Q. Do you have any reason to challenge his—the accuracy of his answer to that question?

A. No.

Id. at p. 61, lines 1-3, lines 17-23.

36. Mr. Christopher admits paragraph 36 of Defendant's <u>Statement of Facts</u>.

37. Mr. Christopher admits paragraph 37 of Defendant's <u>Statement of Facts</u>.

38. Mr. Christopher admits paragraph 38 of Defendant's <u>Statement of Facts</u>.

39. Mr. Christopher admits paragraph 39 of Defendant's <u>Statement of Facts</u>.

40. Mr. Christopher admits paragraph 40 of Defendant's <u>Statement of Facts</u>.

41. Mr. Christopher admits paragraph 41 of Defendant's <u>Statement of Facts</u>.

42. Mr. Christopher admits paragraph 42 of Defendant's <u>Statement of Facts</u>.

43. Mr. Christopher admits paragraph 43 of Defendant's <u>Statement of Facts</u>.

44. Mr. Christopher admits paragraph 44 of Defendant's <u>Statement of Facts</u>.

45. Mr. Christopher admits paragraph 45 of Defendant's <u>Statement of Facts</u>.

46. Mr. Christopher admits paragraph 46 of Defendant's <u>Statement of Facts</u>.

47. Mr. Christopher admits paragraph 47 of Defendant's <u>Statement of Facts</u>.

48. Mr. Christopher admits paragraph 48 of Defendant's <u>Statement of Facts</u>.

49. Mr. Christopher admits paragraph 49 of Defendant's <u>Statement of Facts</u>.

50. Mr. Christopher admits paragraph 50 of Defendant's <u>Statement of Facts</u>.

51. Mr. Christopher admits paragraph 51 of Defendant's <u>Statement of Facts</u>.

52.   Mr. Christopher admits paragraph 52 of Defendant's <u>Statement of Facts</u>.

53.   Mr. Christopher admits paragraph 53 of Defendant's <u>Statement of Facts</u>.

54.   Mr. Christopher admits paragraph 54 of Defendant's <u>Statement of Facts</u>.

55.   Mr. Christopher admits paragraph 55 of Defendant's <u>Statement of Facts</u>.

56.   Mr. Christopher admits paragraph 56 of Defendant's <u>Statement of Facts</u>.

57.   Mr. Christopher admits paragraph 57 of Defendant's <u>Statement of Facts</u>.

58.   Mr. Christopher admits paragraph 58 of Defendant's <u>Statement of Facts</u>.

59.   Mr. Christopher admits paragraph 59 of Defendant's <u>Statement of Facts</u>.

60.   Mr. Christopher admits paragraph 60 of Defendant's <u>Statement of Facts</u>.

61.   Mr. Christopher admits paragraph 61 of Defendant's <u>Statement of Facts</u>.

62.   Mr. Christopher admits paragraph 62 of Defendant's <u>Statement of Facts</u>.

63.   Mr. Christopher admits paragraph 63 of Defendant's <u>Statement of Facts</u>.

64.   Mr. Christopher admits paragraph 64 of Defendant's <u>Statement of Facts</u>.

65.   Mr. Christopher admits paragraph 65 of Defendant's <u>Statement of Facts</u>.

66.   Mr. Christopher admits paragraph 66 of Defendant's <u>Statement of Facts</u>.

67.   Mr. Christopher admits paragraph 67 of Defendant's <u>Statement of Facts</u>.

68.   Mr. Christopher admits paragraph 68 of Defendant's <u>Statement of Facts</u>.

69.   Mr. Christopher admits paragraph 69 of Defendant's <u>Statement of Facts</u>.

70.   Mr. Christopher admits paragraph 70 of Defendant's <u>Statement of Facts</u>.

71.   Mr. Christopher admits paragraph 71 of Defendant's <u>Statement of Facts</u>.

72.   Mr. Christopher <u>DENIES</u> paragraph 72 of Defendant's <u>Statement of Facts</u>.

In fact, Mr. Christopher submitted a written complaint regarding discrimination to his Union, knowing that the Union would in turn submit the

complaint to Spectra.  See attached Exhibit B.  Although Spectra admits that it received Mr. Christopher's written complaint regarding Erik White's discriminatory harassment, Spectra never contacted Mr. Christopher to interview him regarding the complaint, nor did Spectra ever discipline Mr. White in any way based upon Mr. Christopher's complaint. See Defendant's Statement of Facts, ¶ 130; ¶ 7 above, and attached Exhibit C.

73.   Mr. Christopher DENIES paragraph 73 of Defendant's Statement of Facts. See ¶ 72 above.

74.   Mr. Christopher admits paragraph 74 of Defendant's Statement of Facts.

75.   Mr. Christopher admits paragraph 75 of Defendant's Statement of Facts, and affirmatively states that he never complained about Erik White's discriminatory harassment to Wes Ostrander because Wes Ostrander and Erik White were "drinking buddies" and Wes Ostrander personally heard Erik White make discriminatory remarks towards African-Americans and did nothing to stop Mr. White from making them, but instead "just laughed." See Exhibit A, p. 233, lines 24-25; p. 234, lines 1-7.

In fact, on one occasion, Erik White failed to show-up at work without calling in because he was out all night with Wes Ostrander the night before. See Deposition of Stephen Land, p. 48, lines 3-18, attached hereto as Exhibit J.

76.   Mr. Christopher admits paragraph 76 of Defendant's Statement of Facts.

77.   Mr. Christopher admits paragraph 77 of Defendant's Statement of Facts.

78.   Mr. Christopher admits paragraph 78 of Defendant's Statement of Facts.

79.   Mr. Christopher admits paragraph 79 of Defendant's <u>Statement of Facts</u>.

80.   Mr. Christopher admits paragraph 80 of Defendant's <u>Statement of Facts</u>.

81.   Mr. Christopher admits paragraph 81 of Defendant's <u>Statement of Facts</u>.

82.   Mr. Christopher admits paragraph 82 of Defendant's <u>Statement of Facts</u>.

83.   Mr. Christopher admits paragraph 83 of Defendant's <u>Statement of Facts</u>.

84.   Mr. Christopher admits paragraph 84 of Defendant's <u>Statement of Facts</u>.

85.   Mr. Christopher admits paragraph 85 of Defendant's <u>Statement of Facts</u>.

86.   Mr. Christopher admits paragraph 86 of Defendant's <u>Statement of Facts</u>.

87.   Mr. Christopher admits paragraph 87 of Defendant's <u>Statement of Facts</u>.

88.   Mr. Christopher admits paragraph 88 of Defendant's <u>Statement of Facts</u>.

89.   Mr. Christopher admits paragraph 89 of Defendant's <u>Statement of Facts</u>.

90.   Mr. Christopher admits paragraph 90 of Defendant's <u>Statement of Facts</u>.

91.   Mr. Christopher admits paragraph 91 of Defendant's <u>Statement of Facts</u>.

92.   Mr. Christopher admits paragraph 92 of Defendant's <u>Statement of Facts</u>.

93.   Mr. Christopher admits paragraph 93 of Defendant's <u>Statement of Facts</u>.

94.   Mr. Christopher admits paragraph 94 of Defendant's <u>Statement of Facts</u>.

95.   Mr. Christopher admits paragraph 95 of Defendant's <u>Statement of Facts</u>.

96.   Mr. Christopher admits paragraph 96 of Defendant's <u>Statement of Facts</u>.

97.   Mr. Christopher admits paragraph 97 of Defendant's <u>Statement of Facts</u>.

98.   Mr. Christopher admits paragraph 98 of Defendant's <u>Statement of Facts</u>.

99.   Mr. Christopher admits paragraph 99 of Defendant's <u>Statement of Facts</u>.

100.  Mr. Christopher admits paragraph 100 of Defendant's <u>Statement of Facts</u>.

101.  Mr. Christopher admits paragraph 101 of Defendant's <u>Statement of Facts</u>.

102.  Mr. Christopher admits paragraph 102 of Defendant's <u>Statement of Facts</u>.

103.  Mr. Christopher admits paragraph 103 of Defendant's <u>Statement of Facts</u>.

104.  Mr. Christopher admits paragraph 104 of Defendant's <u>Statement of Facts</u>.

105.  Mr. Christopher admits paragraph 105 of Defendant's <u>Statement of Facts</u>.

106.  Mr. Christopher admits paragraph 106 of Defendant's <u>Statement of Facts</u>.

107.  Mr. Christopher admits paragraph 107 of Defendant's <u>Statement of Facts</u>.

108.  Mr. Christopher admits paragraph 108 of Defendant's <u>Statement of Facts</u>.

109.  Mr. Christopher admits paragraph 109 of Defendant's <u>Statement of Facts</u>.

110.  Mr. Christopher admits paragraph 110 of Defendant's <u>Statement of Facts</u>.

111.  Mr. Christopher admits paragraph 111 of Defendant's <u>Statement of Facts</u>.

112.  Mr. Christopher admits paragraph 112 of Defendant's <u>Statement of Facts</u>.

113.  Mr. Christopher admits paragraph 113 of Defendant's <u>Statement of Facts</u>.

114.  Mr. Christopher admits paragraph 114 of Defendant's <u>Statement of Facts</u>.

115.  Mr. Christopher admits paragraph 115 of Defendant's <u>Statement of Facts</u>.

116.  Mr. Christopher <u>DENIES</u> paragraph 116 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 116 because what Erik White allegedly told Tom Campbell constitutes inadmissible hearsay in violation of Fed. R. Evid. 802.

In addition, Plaintiff moves to strike the entire Declaration of Tom Campbell because it contains testimony within the scope of Plaintiff's Fed. R. Civ. P. 30(b)(6) Notice of Deposition (<u>e.g.</u>, Spectra's personnel policies and procedures, Robert Christopher's complaints of discrimination, and the circumstances surrounding Mr. Christopher's separation from Spectra) and

Spectra did <u>not</u> designate Mr. Campbell as a Rule 30(b)(6) witness even <u>after</u> the Court allowed Spectra to supplement the Rule 30(b)(6) testimony of Spectra President John Brunia with the testimony of Stephen Land in its Order of January 25, 2013.  <u>See</u> attached Exhibits E and H.  To allow Mr. Campbell to render post-discovery testimony within the scope of Plaintiff's Fed. R. Civ. P. 30(b)(6) Notice of Deposition would negate the very purpose of Rule 30(b)(6) and this Court's Order of January 25, 2013.

117.   Mr. Christopher admits paragraph 117 of Defendant's <u>Statement of Facts</u>.

118.   Mr. Christopher admits paragraph 118 of Defendant's <u>Statement of Facts</u>.

119.   Mr. Christopher <u>DENIES</u> paragraph 119 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 119 for the reasons stated in paragraph 116 above.

120.   Mr. Christopher <u>DENIES</u> paragraph 120 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 120 for the reasons stated in paragraph 116 above.

121.   Mr. Christopher <u>DENIES</u> paragraph 121 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 121 for the reasons stated in paragraph 116 above.

122.   Mr. Christopher <u>DENIES</u> paragraph 122 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 122 for the reasons stated in paragraph 116 above.

123.   Mr. Christopher <u>DENIES</u> paragraph 123 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 123 for the reasons stated in paragraph 116

above.

124. Mr. Christopher admits paragraph 124 of Defendant's <u>Statement of Facts</u>.

125. Mr. Christopher <u>DENIES</u> paragraph 125 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 125 for the reasons stated in paragraph 116 above.

126. Mr. Christopher <u>DENIES</u> paragraph 126 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 126 for the reasons stated in paragraph 116 above.

127. Mr. Christopher <u>DENIES</u> paragraph 127 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 127 for the reasons stated in paragraph 116 above.

128. Mr. Christopher <u>DENIES</u> paragraph 128 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 128 for the reasons stated in paragraph 116 above.

129. Mr. Christopher <u>DENIES</u> paragraph 129 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 129 for the reasons stated in paragraph 116 above.

130. Mr. Christopher <u>DENIES</u> paragraph 130 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 130 for the reasons stated in paragraph 116 above.

131. Mr. Christopher <u>DENIES</u> paragraph 131 of Defendant's <u>Statement of Facts</u> and moves to strike paragraph 131 for the reasons stated in paragraph 116 above.

132.  Mr. Christopher DENIES paragraph 132 of Defendant's Statement of Facts and moves to strike paragraph 132 for the reasons stated in paragraph 116 above.

133.  Mr. Christopher admits paragraph 133 of Defendant's Statement of Facts.

134.  Mr. Christopher admits paragraph 134 of Defendant's Statement of Facts.

135.  Mr. Christopher admits paragraph 135 of Defendant's Statement of Facts.

136.  Mr. Christopher admits paragraph 136 of Defendant's Statement of Facts.

137.  Mr. Christopher DENIES paragraph 137 of Defendant's Statement of Facts. In Mr. Cissne's deposition, he admitted that he was not qualified to conduct an investigation into allegations of discrimination, that he did not conduct an investigation into Mr. Christopher's complaints of discrimination, and that he never told or suggested to Spectra that he would conduct such an investigation because as Mr. Christopher's employer, it was Spectra's responsibility to conduct an investigation into Mr. Christopher's complaints, not Mr. Cissne's or the Union's. See Deposition of Frank Cissne, p. 21, lines 17-19; p. 32, lines 23-25; p. 33, lines 1-6; p. 36, lines 21-25; p. 37, lines 1-2; p. 38, lines 7-15; p. 66, lines 19-25; p. 64, lines 2-25; p. 67, lines 1-16, attached as Exhibit I.

Mr. Cissne also testified that he referred Mr. Christopher to the EEOC to conduct an investigation of his complaint and that Mr. Cissne had no reason to disagree with the EEOC's finding that Spectra had violated Mr. Christopher's rights under Title VII. Id. at p. 37, lines 4-13; p. 38, lines 3-15; p. 23, lines 1-8.

138.   Mr. Christopher DENIES paragraph 138 of Defendant's Statement of Facts. See ¶ 137 above.

139.   Mr. Christopher DENIES paragraph 139 of Defendant's Statement of Facts. See ¶ 137 above.

140.   Mr. Christopher admits paragraph 140 of Defendant's Statement of Facts.

141.   Mr. Christopher admits paragraph 141 of Defendant's Statement of Facts.

142.   Mr. Christopher admits paragraph 142 of Defendant's Statement of Facts.

143.   Mr. Christopher admits paragraph 143 of Defendant's Statement of Facts.

144.   Mr. Christopher admits paragraph 144 of Defendant's Statement of Facts.

145.   Mr. Christopher admits paragraph 145 of Defendant's Statement of Facts.

146.   Mr. Christopher admits paragraph 146 of Defendant's Statement of Facts.

147.   Mr. Christopher admits paragraph 147 of Defendant's Statement of Facts.

Respectfully submitted this 26th day of April 2013.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

I hereby certify that on April 26, 2013, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Charles W. Wirken
Robert D. Haws
Gust Rosenfeld, P.L.C.
One East Washington, Ste. 1600
Phoenix, Arizona 85004
Attorneys for Defendant


s/ Stephen Montoya